UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ILAKUMARI PATEL, NAREN PATEL, and MVP CONSULTING PLUS INC., | § § § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:13-CV-4491-B |
| | § | |
| SEA NINE ASSOCIATES, INC., et al., | § | |
| | § | |
| Defendants. | § | |

<u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is Plaintiffs' Motion to Remand (doc. 14), filed December 6, 2013. For the reasons stated below, the Court finds that the Motion should be, and hereby is, **GRANTED**.

I.

BACKGROUND

This case arises out of fraudulent representations that Defendants allegedly made in order to induce Plaintiffs to invest in employee benefit plans that ultimately did not possess the tax-exempt qualities that Plaintiffs insist they were promised.[1] Plaintiffs are Naren and Ilakamuri Patel, who reside in New York state, and MVP Consulting Plus, Inc., a New York corporation with its principal place of business in Albany, New York. Doc. 1-3, Orig. Pet. Ex. C ¶¶ 4.01-4.02. Defendants are Prudential Insurance Company ("Prudential"), Comerica Bank ("Comerica"), Sea Nine Associates, Inc. ("Sea Nine"), Kenneth Elliot, Ramesh Sarva, Ramesh Sarva, CPA, P.C., Gaurang Parikh, and

---

[1]The Court draws the relevant background facts from the Plaintiffs' Original Petition, filed in state court. Doc. 1-3, Orig. Pet. Ex. C.

Sean Kath. *Id.* ¶¶ 4.03-4.10.

In their Original Petition, Plaintiffs assert that Defendant Sarva contacted them in 2010 about investing in the Southern California Medical Profession Association Voluntary Employee Beneficiary Association Plan ("the Plan"). *Id.* ¶¶ 7.01-7.02. Sarva maintained that this plan complied with section 419A(f)(6) of the Internal Revenue Code, meaning that it would be exempt from limitations that are placed on deductions taken for employer contributions to certain welfare benefit plans. *Id.* ¶ 7.02. According to Sarva, the Plan would allow Plaintiffs a substantial reduction in their tax obligations while also providing important insurance benefits. *Id.* Sarva's pitch was followed by promotions from Prudential representatives Gaurang Parikh and Sean Kath, who emphasized that Prudential and Comerica, both major financial institutions, were involved in the Plan. *Id.* ¶ 7.03. Defendant Kenneth Elliot then allegedly contacted the Plaintiffs, pushing them to make a swift decision and "leveraging the name recognition of Prudential and Comerica to allay" Plaintiffs' concerns. *Id.* ¶ 7.16.

Plaintiffs insist that Defendants "inundated" them with materials and representations of a "seductively simple" plan that would allow them to contribute substantial cash sums that would be completely deductible from their federal income tax liability. *Id.* ¶ 7.17. Defendants further represented that the contributed funds would be used to purchase life insurance policies, and that, because the Plan was not a "listed transaction," Plaintiffs did not have to file a Form 8886 with the IRS as they normally would when investing in any other listed transaction. *Id.* ¶¶ 7.03, 7.17, 7.19. Plaintiffs allege that Defendants provided them with various other representations in order to induce them to invest in the Plan, including statements from Parikh and Kath that Comerica's legal team had accepted the merits of the Plan, *id.* ¶ 7.03; statements from Sarva and Parikh that they each had

personally invested their own money in the Plan and that many of their other clients had done the same, *id.* ¶ 7.16; opinion letters from paid professionals endorsing the Plan, *id.*; life insurance performance illustrations that did not accurately reveal how the Plan would perform, *id.* ¶ 8.04; and "reams of paperwork" that buried "fraudulent disclaimers" beneath "legalese and fine print," *id.*

After enduring an onslaught of these various representations for some time, Plaintiffs gave in and invested in the Plan. *Id.* ¶ 7.18. Over a two year period, Plaintiffs invested over $3 million in the Plan, taking income tax deductions for the full contribution amounts, and in return received Prudential life insurance policies. *Id.* Per Sarva's representations, Plaintiffs did not file a Form 8886 with the IRS for the years they invested in the Plan. *Id.* ¶ 7.19.

The proverbial other shoe dropped when Plaintiffs were audited by the IRS in 2013. *Id.* ¶ 7.19. The audit revealed that the Plan exhibited many of the same problems that had previously disqualified other similar plans from many of the tax benefits that Defendants had promised to Plaintiffs. *Id.* ¶ 7.20. Specifically, Plaintiffs allege that the Plan (1) required them to pay out much more for their life insurance policies than they would otherwise pay to obtain similar coverage; (2) allowed each participant in the plan to access funds from the death benefits based on contingencies other than death; and (3) improperly insulated participants from the experiences of other participating employers. *Id.* ¶¶ 7.20-7.21. Plaintiffs maintain that the IRS's conclusions in their case were nothing new, and that as early as 1995 the IRS had indicated that cash value insurance policies like the Plan would not meet the requirements of 419A(f)(6) and would therefore not be tax exempt. *Id.* ¶ 7.09. The IRS later affirmed that multiple employer programs like the Plan were listed transactions, and that they constituted unlawful deferred compensations plans. *Id.* ¶ 7.12.

Because the Plan was clearly a listed transaction, the IRS imposed substantial penalties and

interest due to Plaintiffs' failure to file Form 8886 for their contributions to the Plan. *Id.* ¶ 7.22. Following the audit, Plaintiffs approached Defendants with their concerns, but they allege that Defendants either denied any wrongdoing or suggested that Plaintiffs challenge the IRS decision. *Id.* ¶¶ 7.23-7.24. When Plaintiffs demanded their money back, Defendants balked, insisting that Plaintiffs had no right to a refund. *Id.* ¶ 7.25. Instead, Defendants only permitted Plaintiffs to convert their existing policies for a fraction of their original investment. *Id.*

Plaintiffs filed their Original Petition on September 25, 2013, in state court, asserting causes of action against all Defendants for common law fraud, negligence, negligent misrepresentation, unjust enrichment, money had and received, breach of fiduciary duty, and violations of both the Texas Insurance Code and Deceptive Trade Practices Act. *Id.* ¶ 8.01-8.27. Plaintiffs maintain that Prudential, acting through its agents Sea Nine, Sarva, Parikh, Kath, Elliot, and Comerica, "used a pre-packaged program designed by Sea Nine and administered by Sea Nine and Comerica, to induce Plaintiffs to establish employee benefit programs and to invest assets in Prudential insurance policies." *Id.* ¶ 2.01. They aver that, because the Plan was so clearly against the law, Defendants knew that their various representations about the tax benefits of the plan were false. *Id.* ¶ 8.04. They also allege that Defendants' plan was devised solely to facilitate the sale of insurance policies and to permit insurance agents to receive large commissions. *Id.* ¶ 7.05, 7.15. Plaintiffs insist that they did not discover that Defendants had engaged in these false, misleading, and deceptive acts until long after the improper conduct began, and that Defendants, knowing that they had engaged in deceptive acts, fraudulently concealed their own wrongdoing. *Id.* ¶ 9.01-9.03.

On November 8, 2013, Defendant Comerica Bank, with the consent of all served defendants, removed the action to this Court on the basis of federal question jurisdiction. Comerica insists that

Plaintiffs' claims, and specifically their breach of fiduciary duty and negligence claims, arise under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.* Doc. 1, Notice of Removal 2-4; 41, Def.'s Resp. 10-13. Plaintiffs timely moved to remand on December 6, 2013. Doc. 14, Mot. To Remand.

## II.

## LEGAL STANDARD

Title 28 U.S.C. § 1441(a) permits removal to federal court of "any civil action brought in a State Court of which the district courts of the United States have original jurisdiction."[2] A federal court has subject matter jurisdiction over cases "arising under the Constitution, laws, or treaties of the United States[,]" or in cases where the matter in controversy exceeds $75,000, exclusive of interest and costs, and involves complete diversity of citizenship. 28 U.S.C. §§ 1331, 1332.

"To determine whether the claim arises under federal law, [the Court] examines the 'well pleaded' allegations of the complaint and ignore[s] potential defenses." *Beneficial National Bank v. Anderson*, 539 U.S. 1, 6 (2003). "As a general rule, absent diversity jurisdiction, a case will not be removable if the complaint does not affirmatively allege a federal claim." *Id.*; *see also Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 10 (1983) ("a defendant may not [generally] remove a case to federal court unless the plaintiff's complaint establishes that the case 'arises under' federal law.").

The well-pleaded complaint rule has a number of exceptions, however. One of these

---

[2]Comerica has the burden of overcoming the initial presumption that jurisdiction is lacking and of establishing that removal is proper. *See Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). The removal statute must be strictly construed in favor of remand, and all doubts and ambiguities must be resolved against federal jurisdiction. *See Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir. 2000).

exceptions is the artful pleading doctrine, which holds that a plaintiff cannot defeat removal simply by artfully avoiding any suggestion of a federal issue. *Roland v. Green*, 675 F.3d 503, 520 (5th Cir. 2012). Another closely related exception is complete preemption. Complete preemption "recharacterizes" some state law claims as arising under federal law for the purposes of establishing federal question jurisdiction. *Westfall v. Bevan*, No. 3:08-CV-0996-D, 2009 WL 111577, at *3 (N.D. Tex. Jan. 15, 2009) (citing *McClelland v. Gronwaldt*, 155 F.3d 507, 516 (5th Cir. 1998), *overruled in part on other grounds by Arana v. Ochsner Health Plan*, 338 F.3d 433, 440 (5th Cir. 2003) (en banc)). "'[W]hen a federal statute wholly displaces the state-law cause of action through complete pre-emption,' the state claim can be removed." *Aetna Health, Inc. v. Davila*, 542 U.S. 200, 207 (2004) (quoting *Beneficial Nat. Bank*, 539 U.S. at 8). "This is so because '[w]hen the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law.'" *Id.* at 207-208 (quoting *Beneficial Nat. Bank*, 539 U.S. at 8). "ERISA is one of these statutes." *Id.* at 208.

"The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans." *Id.* As part of ERISA's comprehensive regulation of employee benefit plans, ERISA contains "six carefully integrated civil enforcement provisions found in § 502(a)." *Id.* at 209 (internal punctuation and citation omitted). These civil enforcement provisions represent congressional policy choices that "would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA." *Id.* at 208-209. Accordingly, any state law "cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy" addresses an area of exclusive federal concern and is subject to complete preemption. *Id.* at 209; *see also Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 66-67 (1987)

(holding that state causes of action that fall within the scope of ERISA's civil enforcement provisions, section 502(a), are completely preempted under federal law and are therefore removable).  Section 502(a), however, "does not purport to reach every question relating to plans governed by ERISA." *Franchise Tax Bd.*, 463 U.S. at 25.

Another type of preemption is conflict, or ordinary, preemption which involves claims that fall outside ERISA § 502 but are still preempted by ERISA provision § 514(a). Section 514(a) preempts all state laws that "relate to" an employee benefit plan governed by ERISA. 29 U.S.C. § 1144(a). Conflict preemption is not an exception to the "well-pleaded complaint rule," but instead only provides a federal defense to a state law claim. *Westfall*, 2009 WL 111577, at *4. It therefore does not provide a basis for removal to federal court. *Giles v. NYLCare Health Plans, Inc.*, 172 F.3d 332, 337 (5th Cir. 1999).

## III.

## ANALYSIS

Plaintiffs assert that their claims are not preempted under § 502 of ERISA because they are state law actions that do not seek plan benefits, request an interpretation of the plan, or relate to the enforcement of any rights under the Plan. Doc. 14, Pls.' Br. 6-7. Specifically, Plaintiffs maintain that their claims are based entirely on Defendants' pre-plan misrepresentations that induced Plaintiffs to invest in the Plan. *Id.* at 8. According to Plaintiffs' theory of the case, their claims are only tangentially related to ERISA in that the failed 419 Plan at issue was merely "the vehicle selected by the Defendants to defraud the Plaintiffs." *Id.* Plaintiffs repeatedly state that their claims do not address the administration or interpretation of the Plan and, to the extent that Plaintiffs do reference any post-investment conduct, they argue that these allegations are only intended to provide context

to their allegations of pre-investment fraud and do not intrude on ERISA's exclusive territory. *Id.* at 8-12. Finally, Plaintiffs assert that this case is similar to other cases decided in this district in which courts have held that ERISA preemption does not apply to state law claims of fraudulent inducement. *Id.* at 2-3, 9-13.

Defendant Comerica maintains that Plaintiffs' claims involve Plan utilities and seek to clarify and enforce rights under the Plan. Doc. 41, Def.'s Resp. 1-2, 7-8. Comerica insists that, even though Plaintiffs try their best to avoid mentioning ERISA in their Petition, Plaintiffs cannot avoid federal jurisdiction through artful pleading. *Id.* at 3. Comerica specifically argues that because the only direct relationship between Plaintiffs and Comerica is through its role as trustee of the Plan, and because Plaintiffs do not allege that Comerica made any pre-investment communications or that Comerica has an independent duty outside of the Plan, then  the only viable causes of action that Plaintiffs can assert against Comerica must necessarily arise out of the Plan. *Id.* at 8. Comerica focuses its attention on Plaintiffs' breach of fiduciary duty and negligence claims and argues that the only duty upon which these claims could be based would have to arise out of its duties as trustee of the Plan. *Id.* at 10.

Section 502(a) provides in relevant part that:

> (a) A civil action may be brought –
> (1) by a participant . . .
> (B) to recover benefits due him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;
> (2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title; [or]
> (3) by a participant . . . (A) to enjoin any act or practice which violates any provision of this [title] or terms of the plan, or (B) to obtain other appropriate relief (i) to redress such violations or (ii) to enforce provisions of this [title] or the terms of the plan.

29 U.S.C. § 1132(a).[3]

Section 1109 subjects fiduciaries to liability for breach of their statutorily-imposed duties, and makes such fiduciaries "personally liable to make good . . . any losses to the plan resulting from each such breach. . . ." 29 U.S.C. § 1109(a).  ERISA defines *fiduciary* as follows:

> A person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority of control respecting management or disposition of assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in administration of such plan.

29 U.S.C. § 1002(21)(A).

The Fifth Circuit requires a defendant asserting preemption to prove that (1) the claim "addresses an area of exclusive federal concern, such as the right to receive benefits under the terms of the Plan" and (2) the claim "directly affects the relationship among traditional ERISA entities-the employer, the plan and its fiduciaries, and the participants and beneficiaries." *E.I. DuPont de Nemours & Co. v. Sawyer*, 517 F.3d 785, 800 (5th Cir. 2008).[4]  To determine whether any of Plaintiffs' causes

---

[3]Comerica generally restricts its argument for preemption to asserting that the Plaintiffs' claims are covered under § 502(a)(1)(B). Doc. 41, Def.'s Resp. 7-8. Comerica does allege more broadly, however, that some of Plaintiffs' causes of action are completely preempted by "§ 502(a)," and so the Court considers Comerica's arguments in light of the civil enforcement provisions contained in § 502(a) that are most relevant to its arguments.

[4]Although this two-part test was developed as part of the ordinary preemption inquiry under ERISA § 514(a)'s "relate to" standard, the Fifth Circuit and numerous federal district courts in the Fifth Circuit have also considered one or both of these factors in analyzing the preemption of fraudulent inducement claims. *Westfall*, 2009 WL 111577, at *5 n.3 (N.D. Tex. Jan. 15, 2009) (citations omitted); *see also Gulf Coast Plastic Surgery, Inc. v. Standard Ins. Co.*, 562 F. Supp. 2d 760, 767 (E.D. La. 2008) ("Although it is the Court's *subject matter jurisdiction* and whether there is complete preemption under ERISA § 502(a) that is at issue here . . . the question whether complete preemption exists shares similarities with an inquiry into whether a claim relates to an ERISA plan.") (original emphasis). Thus, as in *Westfall*, to the extent necessary, the Court in its analysis also considers "cases discussing preemption of removed fraudulent inducement claims under the

of action fall within the scope of § 502(a), the Court examines Plaintiffs' Petition in light of this two-part test. As already detailed, the Petition alleges the following causes of action against all Defendants: common law fraud, negligence, negligent misrepresentation, unjust enrichment, money had and received, breach of fiduciary duty, and violations of both the Texas Insurance Code and Deceptive Trade Practices Act. Doc. 1-3, Orig. Pet. Ex. C ¶¶ 8.01-8.27.

Reviewing the allegations in the Petition and the causes of action set forth above, the Court agrees with Plaintiffs that the gravamen of the Petition is fraudulent inducement to enter into the 419A plan. Plaintiffs' claims are based on various misrepresentations and omissions that Defendants allegedly made to induce Plaintiffs to invest in the Plan. With regards to Comerica specifically, Plaintiffs allege that Comerica was part of a collective and fraudulent program intended to induce Plaintiffs into investing in the Plan. Doc. 1-3, Orig. Pet. Ex. C ¶ 2.01. Furthermore, Plaintiffs make broad allegations in their Petition that all Defendants collectively acted in a specific manner, and some of these allegations imply that Comerica was complicit, and even had an active hand, in supplying fraudulent materials to Plaintiffs regarding the Plan. *Id.* ¶¶ 7.03, 7.17. All of this conduct occurred prior to the Plan's formation and does not implicate the administration, interpretation, or recovery of benefits of the Plan or relate to a violation of the Plan's terms. *See Westfall*, 2009 WL 111577, at *5 ("[Plaintiffs'] claims do not depend on, or even implicate, the Millennium Plan's terms or its status as an ERISA plan. The claims would exist with respect to any type of an investment–not just an ERISA plan–because they rest on independent statutory and common-law duties that proscribe misrepresentation in various forms. Therefore, they are not preempted under

---

'relate to' standard and the two-prong test developed under it." 2009 WL 111577, at *5 n.3.

§ 502(a)(1)(B).”); *Cotner v. Hartford Life & Annuity Ins. Co.*, No. 3:07-CV-0487-G, 2008 WL 59174, at *5 (N.D. Tex. Jan. 4, 2008) (“ERISA § 502(a)(3) can only be used to redress violations of other ERISA provisions or the terms of the Plan. The Plan in question was not yet in existence when the conduct giving rise to the plaintiffs’ rescission claim occurred. Section 502(a)(3) cannot apply to a Plan not then in existence.”); *Hobson v. Robinson*, 75 F. App’x 949, 955 (5th Cir. 2003) (holding that fraudulent inducement claims were not preempted because they “did not require interpretation or administration of the ERISA plan” and thus related “only indirectly to the ERISA plan”).[5] Thus, without a more direct connection to the Plan or Defendants’ duties under ERISA, the claims are neither “intricately bound with an ERISA plan,” *Hobson*, 75 F. App’x at 955-56, nor do they “duplicat[e], supplemen[t], or supplan[t] the ERISA civil enforcement remedy,” *Aetna Health Inc.*, 542 U.S. at 209, and therefore do not address an area of exclusive federal concern. Accordingly, Defendants fail to make a vital showing to establish complete preemption under the Fifth Circuit test.

　　Plaintiffs’ breach of fiduciary duty and negligence claims are no exception to this holding. While Comerica broadly argues that all of Plaintiffs’ claims are preempted by ERISA, it focuses specific attention on Plaintiffs’ breach of fiduciary duty and negligence claims, insisting that they are completely preempted by ERISA, apparently under § 502(a)(2). Comerica essentially posits that because Plaintiffs have not alleged that Comerica has any independent duty to them outside of the

---

[5]Although Comerica does not devote attention to this issue, it bears noting that while Plaintiffs do allege that Defendants would not acknowledge their scam following the IRS audit and tried to convince Plaintiffs to challenge the IRS decision post-investment, such conduct amounts to concealment of the Defendants alleged fraudulent inducement and is not “intricately bound up with the plan” so as to convey federal jurisdiction. *Westfall*, 2009 WL 111577, at *7.

duties it owes them under the Plan as trustee, then Plaintiffs' fiduciary duty and negligence claims must necessarily arise out of the Plan. Doc. 41, Def.'s Resp. 8. To support this argument, Comerica relies on *Aetna Health Inc. v. Davila*, which states

> where no legal duty (state or federal) independent of ERISA or the plan terms is violated, then the suit falls "within the scope of" ERISA § 502(a)(1)(B). . . . In other words, if an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B).

*Aetna Health Inc.*, 542 U.S. at 210.

Comerica's argument, however, ignores that Plaintiffs' allegations are restricted to pre-investment conduct that does not involve Comerica's duties under the Plan or ERISA. Plaintiffs' claims are each based on the actions that Defendants took to fraudulently induce Plaintiffs to invest in the Plan in the first place. With respect to Comerica specifically, Plaintiffs allege that Comerica participated in a program to induce Plaintiffs to invest in the Plan and that Comerica took part in supplying fraudulent materials to Plaintiffs. Doc. 1-3, Orig. Pet. Ex. C ¶¶ 2.01, 7.03, 7.17. As the Court has already noted, allegations that focus only upon the acts that Comerica and others performed to induce Plaintiffs to invest in the Plan do not address an area of exclusive federal concern. *Hobson*, 75 F. App'x at 956 (holding that plaintiff's state law claims for fraud and misrepresentation were not preempted by ERISA); *Smith v. Texas Children's Hosp.*, 84 F.3d 152, 157 (5th Cir. 1996) (holding that plaintiff's fraudulent inducement claim was not preempted by ERISA); *but see Reliable Home Health Care, Inc. v. Union Cent. Ins. Co.*, 295 F.3d 505, 516 (5th Cir. 2002) (concluding that claims for fraudulent inducement were related to ERISA and therefore preempted because the underlying conduct alleged by plaintiff could not be severed from the Plan); 29 U.S.C.

§ 1109(b) ("No fiduciary shall be liable with respect to a breach of fiduciary duty under this subchapter if such breach was committed before he became a fiduciary or after he ceased to be a fiduciary."). Although Plaintiffs do state their negligence and breach of fiduciary duty claims in broad terms, the Petition makes clear that these claims are based solely on pre-investment conduct that did not implicate the Plan or Comerica's duties under ERISA. Doc. 1-3, Orig. Pet. Ex. C ¶¶ 8.06-8.11, 8.22-8.23. To determine that these claims are preempted, the Court would have to look beyond the well-pleaded allegations of the Complaint, effectively reading in allegations so as to allow removal even when plaintiffs have not affirmatively stated a federal cause of action. *Beneficial National Bank*, 539 U.S. at 6. The Court declines to take such a step when the causes of action are uniquely creatures of state law and are based on duties outside of the putative ERISA plan.

Comerica's argument also implies that because Plaintiffs' causes of action arise between traditional ERISA entities, then they necessarily address an issue of exclusive federal concern. But not only do Plaintiffs' claims not address an area of federal concern, they also do not affect the relationship among traditional ERISA entities. This was the conclusion that the Court reached in *Westfall*, a case that presented circumstances very similar to those presented here. Certain defendants in that case maintained that because they, as the disputed plan's trustee and third-party administrator, did not have contact with the Plaintiffs before the formation of the plan, any allegations against them would implicate an area of federal concern under ERISA. *Westfall*, 2009 WL 111577, at *7. The Court disagreed, noting that these defendants' alleged acts were taken to conceal the fraudulent inducement that led the plaintiffs to initially invest, and were therefore not intricately bound up with the ERISA plan. *Id.* The Court further noted that the claims against the putative plan fiduciaries were not preempted under ERISA because they did not affect the relationship among

ERISA entities. *Id.* at *8. The Court reasoned that the definition of "fiduciary" under ERISA was fluid and not categorical, and that a person is therefore only a fiduciary with respect to activities that bring the person within the definition of fiduciary under the statute, which generally includes activities that involve management and administration of the ERISA plan and its assets. *Id.* Accordingly, the Court concluded that the plaintiffs' fraudulent inducement and fraudulent concealment actions were not brought against defendants in their fiduciary capacities under ERISA because the defendants were not acting as fiduciaries when they cooperated in concealing the misrepresentations made to plaintiffs. *Id.*

A similar logic applies here. Plaintiffs do not level allegations against Comerica in its role as a fiduciary under the Plan, but instead charge that Comerica breached its independent duty as a fiduciary or investment advisor when it made or permitted others to make fraudulent misrepresentations that induced Plaintiffs to invest in the Plan. "A person is a fiduciary only as to the activities that bring the person within the definition, which focuses on the management and administration of the ERISA plan and its assets." *Westfall*, 2009 WL 111577, at *8 (citations omitted); *Bank of Louisiana v. Aetna U.S. Healthcare Inc.*, 468 F.3d 237, 243 (5th Cir. 2006) ("[A] party may qualify as an ERISA fiduciary with regard to some claims but not others."). Plaintiffs do not maintain that Comerica mismanaged or improperly administered the benefits under the Plan, but that it conspired with the other Defendants to induce Plaintiffs to make their initial investment in the Plan. Such allegations, if taken as true, only charge Comerica with acts that fall outside its duties as a fiduciary under ERISA, and therefore are not preempted under § 502(a)(2) or any other provision of the statute. *Westfall*, 2009 WL 111577, at *8; *Hobson*, 75 F. App'x at 954 (holding that in determining whether a party qualified as an ERISA fiduciary, the "critical determination was

whether the claim itself created a relationship between the plaintiff and defendant that is so intertwined with an ERISA plan that it cannot be separated."); *Cotton v. Massachusetts Mut. Life Ins. Co.*, 402 F.3d 1267, 1287 (11th Cir. 2005) (concluding that a lawsuit did not affect relations among traditional ERISA entities because at the time that the defendant fraudulently induced Plaintiffs to buy vanishing premium life insurance policies, it was "not acting in its role as an ERISA entity").

Comerica's reliance on *Aetna Health* is misplaced. In *Aetna Health*, the Supreme Court held that complete preemption applied when a plaintiff "could have brought his claim under ERISA § 502(a)(1)(B)" and "no other independent legal duty . . . is implicated by a defendant's actions." *Aetna Health Inc.*, 542 U.S. at 210. Plaintiffs' claims do not satisfy either of these requirements. As to the first requirement, the Court has already determined that Plaintiffs' claims for fraudulent inducement do not fall within the scope of the civil enforcement provisions of § 502(a) and therefore could not have been brought under ERISA. *Id.*; *Westfall*, 2009 WL 111577, at *5. The claims in *Aetna Health*, by contrast, did fall within the scope of § 502(a) because they derived "entirely from the particular rights and obligations established by the benefit plans." *Aetna Health Inc.*, 542 U.S. at 213. With regards to the second requirement, Plaintiffs' claims allege that Comerica did have an independent duty as a fiduciary or investment advisor outside of the Plan. *Scripps Health v. Schaller Anderson, LLC*, No. 12-CV-252-AJB (DHB), 2012 WL 2390760, at *6 (S.D. Cal. June 22, 2012) (denying that claims for breach of contract were completely preempted because the plaintiff's petition alleged a duty independent of that existing under the ERISA plan). These well-pleaded allegations establish claims that fall outside of the circumstances addressed in *Aetna Health*, and even if Plaintiffs may not be able to ultimately establish such claims against Comerica, the Court cannot infer that Plaintiffs have actually alleged a federal cause of action arising under ERISA without some basis in

the Complaint for doing so.

Because the Court concludes that the none of Plaintiffs' claims are preempted by ERISA, it need not reach the parties' arguments concerning whether the Plan qualifies as an ERISA plan. Even assuming that the Plan is an ERISA plan, Plaintiffs' causes of action do not address a matter of federal concern and do not affect the relationship among traditional ERISA entities in their roles as such. Plaintiffs claims are therefore not preempted, and as a consequence this Court lacks federal subject matter jurisdiction. Plaintiffs' Motion to Remand should therefore be **GRANTED**.

## IV.

## CONCLUSION

For the reasons stated above, Plaintiffs' Motion to Remand is **GRANTED**. The Court **REMANDS** this case to the 192nd District Court of Dallas County, Texas.

SO ORDERED.

SIGNED: May 15, 2014.

_____

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE